In re:  Case No. 15-53371-MEH
**BURNT RICE KOREAN**
**RESTAURANT, INC.**

Chapter 11

_____/

**[PROPOSED] COMBINED PLAN OF REORGANIZATION**
**AND DISCLOSURE STATEMENT**
Nov.15, 2015

**INTRODUCTION**

    This is Debtor's Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

    Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: (a prorata portion of $118,183.56, likely to result in a 15% recovery of allowed claims) in monthly payments over 60 months. Taxes and other priority claims would be paid in full, as shown in Part 3.

    Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than [date]. The court will hold a hearing on confirmation of the Plan on [date] at [time].

    Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Property to be Surrendered.**

None

**Creditors' Rights Remain Unchanged.**

None

**Debtor to Make Regular Payments and Pay Arrears Over Time.**

**None**

**Debtor to Strip Lien to Value of Collateral and Pay Over Time.**

| Class | Name of Creditor | Collateral | Value | Interest Rate | Monthly Payment |
|---|---|---|---|---|---|
| 1 | Akribis Group, LLC | All restaurant assets | 37,047.04[1] | 5.00 | 699.12 |

Debtor contends that the value of the collateral is less than the amount of the claim. Before confirmation, Debtor will obtain an order from the court determining the value of the above collateral. Debtor will pay as a secured claim the amount equal to the value of the collateral. Debtor will pay the above secured claim in full with interest from the Effective Date of the Plan through 60 equal monthly payments. Payments will be due on the 1st day of the month, starting month after The Effective Date. Any remaining amount due is a general unsecured claim treated in Part 2. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). The Court's Guidelines for Valuing and Avoiding Liens in Individual Chapter 11 Cases and Chapter 13 Cases will apply. **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**Debtor to Strip Off Lien.**

None

**Debtor to Adjust Terms and Pay Amount Due in Full Over Time.**

| Class | Name of Creditor | Collateral | Amount Due | Interest Rate | Monthly Payment | Term |
|---|---|---|---|---|---|---|

---

[1] The value of the restaurant as of Nov. 2, 2015 is $60,000 pursuant to Business Appraisal Valuation Report by Rick Chehab, MBA, Professional CA Business Broker. The restaurant is encumbered by a senior lien to Opportunity Fund, in the amount of $22,952.96

| 2 | Opportunity Fund | All restaurant assets | 22,952.96 | 5.00 | 433.13 | 5 years |

    Debtor will pay the entire amount contractually due with interest through 60 equal monthly payments, due the 1st day of the month, starting month after the Effective Date on the above secured claims. Creditors in these classes shall retain their interest in the collateral until Debtor makes all payments on the allowed secured claim specified in the Plan.

    Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and are entitled to vote on confirmation of the Plan.**

    Payments to claimants in these classes may continue past the date Debtor obtains a discharge. The claimants' rights against its collateral shall not be affected by the entry of discharge, but shall continue to be governed by the terms of this Plan.

**Property to be Sold.**

    None

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 3. General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Bank of America (x0311) | 10,121.77 | N | 1,518.27 | 25.30 |
| Chase (x0055) | 10,121.51 | N | 1,518.22 | 25.30 |
| Chase (x0330) | 3,188.05 | N | 478.21 | 7.97 |
| Chase (x2763) | 2,047.44 | N | 307.12 | 5.12 |
| Citibank (x2212) | 6,914.44 | N | 1,037.92 | 17.30 |
| Citibank(8295) | 4,751.69 | N | 712.75 | 11.88 |
| Discover (0231) | 1,951.06 | N | 292.74 | 4.88 |

Individual Chapter 11
Combined Plan & Disclosure Statement    (Version: 7/30/12)
July 30, 2012
-4-
Case: 15-53371   Doc# 39   Filed: 11/16/15   Entered: 11/16/15 14:35:41   Page 4 of 19

| First National Bank (x8246) | 5,080.65 | N | 762.10 | 12.70 |
|---|---|---|---|---|
| American Express (42004) | 953.38 | N | 143.01 | 2.38 |
| American Express x1009) | 2,844.03 | N | 426.60 | 7.11 |
| American Express (x8100) | 11,313.05 | N | 1,696.96 | 28.28 |
| American Express (52000) | 8,332.95 | N | 1,249.94 | 20.83 |
| American Express (x21004) | 2,938.53 | N | 440.78 | 7.35 |
| American Express (x51004) | 8,017.78 | N | 1,202.67 | 20.05 |
| Loan Me | 75,000 | N | 11,250 | 187.50 |
| PG&E | 7,000 | N | 1,050 | 17.50 |
| Coca Cola | 500 | N | 75.00 | 1.25 |
| Wine Warehouse | 900 | N | 135 | 2.25 |
| Akribis Group, LLC (under-secured) | 11,552.96 | N | 1,732.94 | 28.88 |
| Akribis Group | 15,000 | N | 2,250 | 37.50 |
| Akribis Group | 5,000 | N | 750 | 12.50 |
| IRS (non-priority) | 10,188.74 | N | 1,528.31 | 25.47 |
| FTB non-priority | 1,090.67 | N | 163.60 | 2.73 |
| Adolfo Chavez | 1,500 | N | 225 | 3.75 |
| Jose Agudo | 440 | N | 66 | 1.1 |
| **TOTAL** | **206,754.20** | | **31,013.13** | **516.89** |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling $31,013.13, created by Debtor's payment of $516.89 per month for a period of 60 months, starting the month after the Effective Date of the Plan. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default, are

impaired **and are entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**Class 4: General Unsecured Shareholder Debt**

| Name of Creditor | Amount of Claimant | Disputed (Y/N) | Amount to be Paid | Monthly Payment |
|---|---|---|---|---|
| Michael Moore | 29,045 | N | 0 | 0 |
| Kristal Fields | 552,089.80 | N | 0 | 0 |
| **TOTAL** | **581,134.80** | | **0** | **0** |

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default, are impaired **and are entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**Class 5: Dynamic Capital**

Dynamic Capital holds preferred stock in debtor valued at $95,000 on the balance sheet but having no current liquidation value because all assets are over-encumbered. It shall retain its equity position, its contractual dividends shall accrue but it shall not receive any distribution until debtor has performed all obligations under the plan.

**Class 6: Common Stock Shareholders**

Kristal Fields holds 51% of the common stock and Michael Ali Moore holds 49% of the common stock of Debtor. Because all corporate assets are over-encumbered, their stock has no current liquidation value. They shall retain their equity position but shall not receive any distribution until debtor has performed all obligations under the plan.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a) <u>Professional Fees</u>.

The following professionals have agreed to accept payment over time as follows. Payments will be made monthly, due on the 1st day of the month, starting the month after the Effective Date or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| The Fuller Law Firm, P.C. | 10,000 | 416.67 | 24 |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b) Other Administrative Claims. Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| None | |

(c) Tax Claims. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made monthly, due on the 1st day of the month, starting the month after confirmation of the Plan. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action

against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Internal Revenue Service | 7,180.47 | 4.00 | 148.76 | 54 |
| FTB, Board of Equalization | 31,792.86 | 4.00 | 658.68 | 54 |
| FTB | 3,495.01 | 4.00 | 72.41 | 54 |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due. Pre-confirmation arrears will be paid in full on the Effective Date unless the Court authorizes a sooner cure.

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| WPV San Jose, LLC | Lease of 1810 square feet retail space at Building, 15, Suite 20 at 121 Curtner Ave., Suite 20 San Jose | 9,438.82 | 9,438.82 | 1 |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| None | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed assumed.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) <u>Discharge</u>.  Debtor shall receive a discharge of debts on confirmation of the Plan.

(b) <u>Vesting of Property</u>.  On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>.  Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law.  To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

**PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN**

(a) <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan. Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b) <u>Obligations to Each Class Separate</u>.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c) <u>Material Default Defined</u>.  If Debtor fails to make any payment, or to perform any other obligation required under the

Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default. If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d) <u>Remedies Upon Material Default</u>. Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e) <u>Claims not Affected by Plan</u>. Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on default of the type that need not be cured under section 1124(2)(A) and (D).

(f) <u>Effect of Conversion to Chapter 7</u>. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) <u>Retention of Jurisdiction</u>. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**

(a) <u>Effective Date of Plan</u>. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) <u>Disputed Claim Reserve</u>. Debtor will create a reserve for disputed claims. Each time Debtor makes a distribution to the holders of allowed claims, Debtor will place into a reserve the amount that would have been distributed to the holders of disputed claims if such claims had been allowed in the full amount claimed. If a disputed claim becomes an allowed claim, Debtor shall immediately distribute to the claimant from the reserve an amount equal to all distributions due to date under the plan calculated using the amount of the allowed claim. Any funds no longer needed in reserve shall be returned to Debtor. There are no known disputed claims.

(c) <u>Cramdown</u>. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(d) <u>Severability</u>. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(e) <u>Governing Law</u>. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

(f) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| Kristal Fields | Y | Preference payments on loan from insiders within one year of filing | 12,400 | N[2] |
| Michael Moore | Y | Preference payments on loan from insiders within one year of filing | 14,220 | N |

    Debtor owes Kristal Fields $552,089.80 representing the unpaid loan balance as of the commencement date. Kristal Fields worked at the restaurant without compensation but, within the one year before the commencement date, was repaid $12,400 of her loan which she used for living expenses. The loan repayments are set forth in Exhibit "5" hereto. Since Kristal Fields continued to render services after the loan repayment, under the "new value" defense of 11 U.S.C. 547(c)(4)(B) arguably these payments do not constitute a preference. Similarly, Debtor owes Michael Ali Moore $29,045. His loan repayments are also set forth in Exhibit "5". He also continued to render services without other compensation after the repayment of the loan as set forth in Exhibit "5".

    Regardless, general unsecured creditors other than Kristal Fields and Michael Moore are receiving $31,013, more than the $26,620 preference claim, if any there be.

(g) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

Kristal Fields, President
Burnt Rice Korean Restaurant, Inc.
121 Curtner Ave., Ste. 20
San Jose, CA 95125

---

[2] More than the preferential payment amount will be repaid to general unsecured creditors.

Individual Chapter 11
Combined Plan & Disclosure Statement     (Version: 7/30/12)
July 30, 2012
-12-
Case: 15-53371    Doc# 39    Filed: 11/16/15    Entered: 11/16/15 14:35:41    Page 12 of 19

(h) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(i) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.


Dated: 11/15/2015

      /s/ Kristal Fields,
President Burnt Rice Korean Restaurant, Inc.
Debtor

Dated:　　11/15/2015

      /s/ Lars T. Fuller
Attorney for Debtor

Individual Chapter 11
Combined Plan & Disclosure Statement            (Version: 7/30/12)
July 30, 2012                    -13-
Case: 15-53371   Doc# 39   Filed: 11/16/15   Entered: 11/16/15 14:35:41   Page 13 of 19

**Attorney Certification**

I, Lars T. Fuller, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Part 5(a). Changed the language to provide that Debtor to receive a discharge on confirmation.

Exhibit 2 was modified to reflect corporate assets

Part 7(f) was modified to explain the preference claim to insiders and Exhibit "5" of the Combined Plan, not being applicable to this case was replaced with Exhibit "5' showing the arguable preference payments.

I declare that the foregoing is true and correct. Executed this 15th day of November, 2015.

                                               /s/Lars T. Fuller

                                               Attorney for Debtor

Individual Chapter 11
Combined Plan & Disclosure Statement                (Version: 7/30/12)
July 30, 2012
-14-
Case: 15-53371   Doc# 39   Filed: 11/16/15   Entered: 11/16/15 14:35:41   Page 14 of 19

**Exhibit 1 - Events That Led To Bankruptcy**

In 2014 Debtor took out a merchant cash advance from CAN Capital in the approximate amount of $65,000. CAN Capital would debit Debtor's account daily. As such debtor had to take out an additional loan from CAN Capital of approximately $80,000 to pay off the merchant account and have operating funds.

In May 2015 Debtor took out a loan of $75,000 from Loan Me at 99.99% interest to pay off CAN Capital so as to stop the daily debits which impaired Debtor's ability to operate.

Debtor wanted to pay off Loan Me within a month or two, but did not qualify for another loan.

Debtor then became delinquent in utilities.

Debtor faced either re-organization or closing the doors. This plan will allow debtor to continue to operate and pay general unsecured creditors a dividend.

**Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7**

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Checking- B of A and Chase | 7,427.52 | 7,427.52 | 0 | 0 |
| Liquor and Food inventory | 4,506.01 | 4,506.01 | 0 | 0 |
| Furniture , Equip. Supplies and Goodwill | 48,066.47 | 48,066.47 | 0 | 0 |
| TOTAL | | | | 0 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | 0 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | 26,620 |
| Chapter 7 Administrative Claims [SUBTRACT] | 0 |
| Chapter 11 Administrative Claims [SUBTRACT] | 30,000.00 |
| Priority Claims [SUBTRACT] | 42,468.34 |
| Chapter 7 Trustee Fees [SUBTRACT] | 3,476 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | 0[3] |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | 0 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims(without shareholder debt) | 206,754 |
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 15% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |

---

[3] Assumes creditor will hand over preferential payments without litigation.

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)
July 30, 2012

-16-

**Exhibit 3 - Monthly Income and Expenses**

| Income | Amount |
|---|---|
| Cash Sales | 13,360.75 |
| Catering Sales | 23,177.47 |
| Lavu on Premises sales | 43,635.47 |
| **A. Total Monthly Income** | **80,174.02** |

| Expenses | Amount |
|---|---|
| Food Cost | 22,385.51 |
| Beverage Cost | 941.33 |
| **TOTAL COST OF GOODS SOLD** | **24,587.95** |
| **GROSS PROFIT** | **55,586.07** |
| Cost of Labor | 26,338.29 |
| GNA & Controllable Exp | 12,396.05 |
| Advertising and Promotion | 316.01 |
| Occupancy Cost | 11,552.02 |
| **B. Total Monthly Expenses** | **50,602.37** |

| **C. Disposable Income** (Line A - Line B) | **4,983.70** |
|---|---|

| **Plan Payments** Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---|
| Administrative Claims | 416.67 |
| Priority Claims | 879.85 |
| Class 1: Akribis | 699.12 |
| Class 2: Opportunity Fund | 433.13 |
| General Unsecured Creditors | 516.89 |
| **D. Total Plan Payments** | **2,945.66** |

| **E. Plan Feasibility** (Line C - Line D) | **2,038.04** |
|---|---|

This income and these expenses are based on Sept. 2015 actual data. Oct. 2015 data is expected to show about $1,000 in increased profitability. These data reflect no salary to the principals.

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | 11,000 |
| Payments on Effective Date |  |  |
| Unclassified Claims | 0 |  |
| Administrative Expense Claims | 9,438.82 |  |
| Priority Claims | 0 |  |
| Small Claims (Class 2(a)) | 0 |  |
| U.S. Trustee Fees | 650 |  |
| B. Total Payments on Effective Date |  | 10,088.82 |
| **C. Net Cash on Effective Date** (Line A – Line B) (Not feasible if less than zero) |  | 911.18 |

Payments to Insiders within 1 Year

| Kristal Fields | |
|---|---|
| Date | Amt Paid |
| 1/31/2015 | 200 |
| 2/28/2015 | 40 |
| 3/31/2015 | 600 |
| 5/4/2015 | 2000 |
| 5/31/2015 | 750 |
| 6/5/2015 | 2600 |
| 6/29/2015 | 400 |
| 6/30/2015 | 640 |
| 7/2/2015 | 2500 |
| 7/31/2015 | 370 |
| 8/3/2015 | 2600 |
| 8/10/2015 | 500 |
| 8/18/2015 | 100 |
| 8/31/2015 | 300 |
| 9/28/2015 | 300 |
| 9/29/2015 | 300 |
| 9/30/2015 | 390 |
| Total | 14590 |

| Michael Moore | |
|---|---|
| Date | Amt. paid |
| 10/31/2014 | 400 |
| 11/30/2014 | 300 |
| 12/31/2014 | 120 |
| 1/31/2015 | 200 |
| 3/31/2015 | 400 |
| 4/30/2015 | 500 |
| 5/18/2015 | 400 |
| 5/27/2015 | 630 |
| 5/31/2015 | 880 |
| 6/30/2015 | 1300 |
| 7/13/2015 | 3500 |
| 7/14/2015 | 1500 |
| 7/31/2015 | 1100 |
| 8/31/2015 | 1130 |
| 9/30/2015 | 310 |
| Total | 12670 |